# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 – Fax

March 22, 2013

Paul Rodney Schlitz, Jr., Esq.
Mering and Schlitz LLC
343 N. Charles Street, Third Floor
Baltimore, MD 21201

Alex S. Gordon, Esq.
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201

     Re:  Nicole Bettis v. Commissioner Michael J. Astrue
         Civil No. SKG-12-826

Dear Counsel:

    Plaintiff, Nicole A. Bettis, by her attorney, Paul R.
Schlitz, Jr., filed this action seeking judicial review pursuant
to 42 U.S.C. § 405(g) of the final decision of the Commissioner
of the Social Security Administration ("the Commissioner"), who
denied her claim for Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI") under sections 205(g) and
1631(c)(3) of the Social Security Act ("the Act").  This case
has been referred to the undersigned Magistrate Judge by consent
of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule
301.  No hearing is necessary. Local Rule 105.6.

Currently pending before the Court are cross motions for summary judgment and plaintiff's request for remand in the alternative.  The Court acknowledges that this young woman has a serious psychiatric history and sympathizes with her and her family in their attempts to address her conditions with its related challenges.  However, the Court has concluded that under the applicable law, she is not entitled to disability.  For the reasons that follow, the Court hereby DENIES plaintiff's motion for summary judgment, GRANTS defendant's motion for summary judgment, and AFFIRMS the decision of the ALJ.

## I.   Procedural History

On June 25, 2009, plaintiff applied for DIB and SSI benefits, alleging that she had become unable to work beginning October 3, 2007 due to depression and anxiety. (R. 14, 132).

On November 20, 2009, plaintiff's applications for DIB and SSI were denied at both the initial and reconsideration levels. (R. 57-64, 67-70). Thereafter, the plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (R. 71-73). An administrative hearing was held on March 24, 2011 before ALJ Melvin G. Olmscheid. (R. 25). On May 4, 2011, the ALJ issued an unfavorable written decision that plaintiff was not disabled within the meaning of the Act. (R. 14-24).

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the agency.

(R.1). Plaintiff now seeks review of that decision pursuant to 42 U.S.C. § 405(g).

## II.  Factual History

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record in all material respects, hereby adopts it.

## III. ALJ Findings

In reviewing a claimant's eligibility for DIB and SSI, an ALJ must consider all of the evidence in the record and follow the sequential five-step analysis set forth in the regulations to determine whether the claimant is disabled as defined by the Act.  20 C.F.R § 416.920(a).[1]  If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further.  20 C.F.R. § 404.1520(a)(4).  After proceeding through each of the required steps, the ALJ in this case concluded that Ms. Bettis was not disabled as defined by the Act.  (R. 14).

At the first step, the claimant must prove that he or she is not engaged in "substantial gainful activity."[2]  20 C.F.R. §

---

[1] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).

[2] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial if it involves doing significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer

416.920(a)(4)(i).  If the ALJ finds that the claimant is engaged in "substantial gainful activity," he or she will not be considered disabled.  Id.  Here, the ALJ found that Ms. Bettis' earnings in 2007, 2008, and 2009 do not qualify as substantial gainful activity (R. 16). He therefore concluded that Ms. Bettis "has not engaged in substantial gainful activity since October 3, 2007, the alleged onset date."  (R. 16).

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit her ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  In addition, there is a durational requirement that the claimant's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that Ms. Bettis' bipolar disorder, anxiety, and substance abuse were severe impairments due to their more than minimal limitation on Ms. Bettis' ability to perform basic work activities. (R. 16).

At the third step, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §

---

responsibilities than when she worked before.  20 C.F.R. § 416.972(b).
Substantial gainful activity does not include activities such as household
tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. §
416.972(c).

416.920(a)(4)(iii).  If one of the Listings is met, disability will be found without consideration of age, education, or work experience.  20 C.F.R. § § 404.1520(d), 416.920(d). Here, the ALJ found that Ms. Bettis' does not have an impairment or combination of impairments that meet or equal an impairment enumerated in the "Listing of Impairments." (R. 17).

More specifically, the ALJ reviewed Listings 12.04 (affective disorder) and 12.09 (substance abuse disorder). (R. 17). In order to meet Listing 12.04, the claimant must meet the requirements in either both "paragraph A" and "paragraph B" or "paragraph C" alone.  20 C.F.R. § 404, Subpart P, Appendix 1. To satisfy "paragraph A" criteria, the claimant must show medically documented persistence of depressive syndrome, manic syndrome, or bipolar syndrome. Id. To satisfy "paragraph B" criteria, the claimant must show at least two of the following criteria: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation of extended duration. Id. Where a "marked" level is required, it means more than moderate but less than extreme. Id.

The ALJ found that Ms. Bettis did not satisfy "paragraph B" requirements because her mental impairments did not result in marked limitations or in repeated episodes of decompensation.

(R. 18). The ALJ found that Ms. Bettis has only mild restriction in activities of daily living due to her ability to function independently and her ability to meet her personal needs from a mental and cognitive standpoint; the ALJ noted that the State psychologist agreed with this conclusion. (R. 17). The ALJ found that Ms. Bettis has moderate difficulties in social functioning because, although she does not participate in organized activities, she is able to relate to others, demonstrate socially acceptable behavior, and visit a former girlfriend and a long-time friend once or twice a week. (R. 17). The ALJ additionally concluded that Ms. Bettis has moderate difficulties in concentration, persistence or pace, because, although she has difficulties in concentration, she is able to understand simple and complex instructions, would not be a distraction to coworkers, keeps a journal and reads. (R. 17-18). Moreover, the ALJ found that Ms. Bettis experienced only one to two episodes of decompensation of extended duration. (R. 18).

To satisfy "paragraph C" criteria, the claimant must show a medically documented history of the affective disorder of at least two years that has caused more than minimal limitation of ability to do basic work activities, "with symptoms or signs currently attenuated by treatment or psychosocial support." 20 C.F.R. § 404, Subpart P, Appendix 1. In addition, the claimant must show at least one of the following: repeated episodes of

decompensation of extended duration, a disease process that indicates that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate, or a current history of an inability to function outside of a highly supportive living arrangement. Id.

The ALJ concluded that Ms. Bettis did not satisfy "paragraph C" requirements. (R. 18). The ALJ found that the record was devoid of evidence that established repeated episodes of decompensation, potential episodes of decompensation, or Ms. Bettis' inability to function outside of a highly supportive environment. (R. 18).

In order to meet Listing 12.09, the claimant must show behavioral or physical changes that are associated with regular use of substances that affect the central nervous system. 20 C.F.R. § 404, Subpart P, Appendix 1. In order to reach the required level of severity associated with substance addiction, the claimant must meet the requirements of any of the following disorders: organic mental disorder (to be evaluated under listing 12.02); depressive syndrome (to be evaluated under listing 12.04); anxiety disorder (to be evaluated under listing 12.06); personality disorder (to be evaluated under listing 12.08); peripheral neuropathy (to be evaluated under listing 11.14); liver damage (to be evaluated under listing 5.05); gastritis (to be evaluated under listing 5.00); pancreatitis (to

be evaluated under listing 5.08); or seizures (to be evaluated under listings 11.02 or 11.03). Id.

The ALJ determined that Ms. Bettis' condition does not meet or medically equal the criteria of Listing 12.09 when he determined that she did not meet Listing 12.04. (R. 17).

Before an ALJ advances to the fourth step of the sequential analysis, she must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis.  20 C.F.R. § 404.1520(e).  RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  Social Security Ruling (SSR) 96-8p.  The ALJ must consider even those impairments that are not "severe."  20 C.F.R. § 404.1545(a)(2).

In determining a claimant's RFC, ALJs evaluate the claimant's subjective symptoms, such as allegations of pain, using a two-part test.  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529.  First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms.  20 C.F.R. § 404.1529(b).  Once the claimant makes that first showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  At this second stage, the

ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant.  20 C.F.R. § 404.1529(c).  The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence.  SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations.  Id.

Here, the ALJ determined that Ms. Bettis has the following RFC: Ms. Bettis can perform a full range of work at all exertional levels but with nonexertional limitations. (R. 18). Specifically, Ms. Bettis is limited to work that is unskilled, routine and repetitive, and that is essentially isolated with only occasional supervision. (R. 18). The ALJ determined that Ms. Bettis had medically determinable impairments, depression and bipolar disorder with past suicidal ideation, that could reasonably be expected to cause the alleged symptoms. (R. 19). However, the ALJ found that Ms. Bettis' statements regarding the intensity, persistence, and limiting effects of her symptoms were only partially credible. (R. 19, 21). The ALJ so concluded based on Ms. Bettis' activities of daily living, which included independent meal preparation and personal care and activities

9

outside her home, and his findings that Ms. Bettis was noncompliant with her medication and that she reduced her hours to 16 hours a month in order to gain food stamp and social welfare benefits. (R. 20-22). The ALJ additionally relied on Ms. Bettis' examination by the State agency psychological consultant. (R.22).

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ concluded that Ms. Bettis' previous work, as a certified nursing assistant and sales associate, is considered semi-skilled or skilled work. (R. 23). Thus, the ALJ concluded that Ms. Bettis is unable to perform her past relevant work. (R. 23).

Where, as here, the claimant is unable to resume her past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis.  This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, the claimant is capable of other work in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g). At this step, the burden of proof shifts to the agency to establish that the claimant retains the RFC to engage in an alternative job which exists in the national economy.  <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983); <u>Wilson v.</u>

Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The agency must prove both the claimant's capacity to perform the job and that the job is available.  Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).  Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled work, it must show that she possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary.  McLain, 715 F.2d at 869.

In this case, the ALJ found that although Ms. Bettis is unable to perform her past relevant work, given her age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she can perform. (R. 23). Based on the testimony of the vocational expert, the ALJ determined that Ms. Bettis could perform the requirements of representative occupations, such as, order filler (4,000 jobs locally, 778,000 nationally) and linen room attendant (420 jobs locally, 450,000 nationally). (R. 24).

Therefore, the ALJ concluded that Ms. Bettis had not been under disability from the alleged onset date of October 3, 2007 through the date of denial of disability. (R. 24).

## IV.  Standard of Review

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial

11

evidence, not to try plaintiff's claim de novo.  King v.
Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must
uphold the Commissioner's decision if it is supported by
substantial evidence and if the ALJ employed the proper legal
standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v.
Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829
F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists
of more than a scintilla of evidence but may be somewhat less
than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642
(4th Cir. 1966).  It is "such relevant evidence as a reasonable
mind might accept to support a conclusion."  Richardson v.
Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

    In reviewing the decision, this Court will not re-weigh
conflicting evidence, make credibility determinations, or
substitute its judgment for that of the Commissioner.  Craig, 76
F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.
1990).  The Commissioner, as fact finder, is responsible for
resolving conflicts in the evidence.  Snyder v. Ribicoff, 307
F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings
are supported by substantial evidence, this Court is bound to
accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.
1962).  However, despite deference to the Commissioner's
findings of fact, "a factual finding by the ALJ is not binding
if it was reached by means of an improper standard or

misapplication of the law." Coffman, 829 F.2d at 517.  The

Court has authority under 42 U.S.C. § 405(g) to affirm, modify,

or reverse the decision of the agency "with or without remanding

the case for a rehearing." Melkonyan v. Sullivan, 501 U.S. 89,

98 (1991).

## V.   Discussion

Ms. Bettis makes several arguments in support of her

position that the ALJ decision should be reversed or, in the

alternative, remanded. Ms. Bettis argues that: (1) the ALJ

improperly gave weight to the non-examining psychologists'

reports; (2) the non-examining psychologists improperly signed

their reports; (3) the ALJ's finding that she experienced only

one or two episodes of decompensation was not supported by

substantial evidence; (4) the ALJ did not make findings with

regards to Listings 12.06 (anxiety disorders), 12.07 (somatoform

disorders), or 12.08 (personality disorders); and (5) the ALJ

improperly considered Ms. Bettis' noncompliance with her

medication.

### a. The ALJ properly considered the opinion evidence of the non-examining psychologists.

Ms. Bettis challenges the ALJ's reliance on the non-

examining psychologists' reports. (ECF No. 15-1, 6). First, she

challenges the ALJ's reliance on Dr. Wessel's report. (ECF No.

15-1, 6). Ms. Bettis states that there is nothing in the record

to support Dr. Wessel's statement that Ms. Bettis was curtailing her work hours in order to retain food stamps and social security benefits. (ECF No. 15-1, 6). She argues that, by including such an unfounded assertion in his report, Dr. Wessel's medical opinion is undermined. (ECF No. 15-1, 6). Second, Ms. Bettis challenges Dr. Boyer's report. (ECF No. 15-1, 7). She states that the ALJ should not rely on Dr. Boyer's report, as he simply "unthinkingly affirms" Dr. Wessel's report and did not consider Ms. Bettis' medical evidence that was added to the record after Dr. Wessel wrote his report. (ECF No. 15-1, 6-7).

In deciding the weight to give medical opinions, the ALJ considers several factors, including: the examining relationship between the physician and the claimant; the treatment relationship between the physician and the claimant; the extent to which a medical opinion is supported by evidence; the consistency of a medical opinion with the record as a whole; and the specialization of the physician. 20 C.F.R. § 416.927(c). Moreover, the weight given to non-examining source depends "on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3). Finally, the ALJ may afford great weight to nonexamining state agency physicians' opinions when the nonexamining source's opinion is supported by the record. SSR 96-6p; <u>Smith v.</u>

<u>Schweiker</u>, 795 F.2d 343, 346 (4th Cir. 1986) ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record").

Dr. Wessel's statement that Ms. Bettis curtailed her work hours in order to retain food stamps and social security benefits does not indicate, as Ms. Bettis contends, "alarming bias" against her. (ECF No. 15-1, 6). Dr. Wessel's finding is supported by the record; Ms. Bettis stated, in her Disability Report, that she "now work[s] no more than 16 hours per month which is necessary to keep [her] benefits." (R. 165).  Dr. Wessel's conclusion that Ms. Bettis had reduced her hours in order to keep her benefits (R. 353) is a reasonable interpretation of this statement and therefore does not, as Ms. Bettis claims, show that Dr. Wessel "exhibited . . . alarming bias against Bettis." (ECF No. 15-1, 6). In addition, Dr. Wessel's report contains an analysis of the medical evidence and is consistent with both the record and the report of Dr. Hirsch, the consultative examiner.[3] <u>Cf. Eaton v. Astrue</u>, CIV. JKS-11-

---

[3] Dr. Wessel stated that Ms. Bettis underwent a psychiatric evaluation on November 5, 2009, the date that she saw Dr. Hirsch, and summarizes Dr. Hirsch's findings. (R. 353). Dr. Hirsch, in his consultative examination, evaluated Ms. Bettis' activities of daily living, mental status, and work-related functioning. (R. 338-340). First, he stated that, in terms of activities of daily living, Ms. Bettis sleeps about 14 hours a day and that she leaves her house three times a week for two to three hours. (R. 338). Second, in the mental health examination, Dr. Hirsch stated that Ms. Bettis is cooperative and behaves appropriately, that her stream of mental activity is spontaneous and that she is responsive to questions, that she seems depressed and anxious, and that she was oriented to time and place. (R. 338-339). Third, Dr. Hirsch found that, in terms of work-related functioning, Ms.

2497, 2012 WL 3241042 (D. Md. Aug. 6, 2012) (stating that the ALJ in that case gave proper weight to the nonexamining state source because the ALJ could conclude that the report was amply supported by the medical evidence in the record). Moreover, the ALJ utilizes both Dr. Wessel and Dr. Hirsch's reports in his analysis. (R. 17-23). Therefore, the ALJ appropriately considered Dr. Wessel and Dr. Hirsch's reports, as both were consistent with and supported by the record, and Dr. Hirsch examined Ms. Bettis. See 20 C.F.R. § 416.927(c)(stating that, generally, more weight is given to opinions of examining sources and that opinions that are consistent with and supported by the record are given more weight).

Dr. Boyer's report affirmed Dr. Wessel's report. (R. 378). Ms. Bettis claims that "reliance upon the medical evidence of Dr. Boyer would be fatuous." (ECF No. 15-1, 7). However, the ALJ did not rely on Dr. Boyer's report in his analysis. (R. 14-24).

### b. The nonexamining state psychologists did not fail to issue properly signed reports.

Ms. Bettis next argues that the non-examining State psychologists violated the requirement to issue a properly signed report under 20 C.F.R. §404.1519n(e)(2012) and 20 C.F.R.

---

Bettis can understand simple and complex instructions and that "she certainly does appear to be somebody who would be qualified for the job should she pursue them." (R. 339). Finally, Dr. Hirsch included diagnoses and prognoses in his consultative examination. (R. 340). He stated that Ms. Bettis suffers from bipolar disorder and generalized anxiety disorder and that there was a possibility that she suffered from narcissistic personality disorder. (R. 340). He concluded that Ms. Bettis had a Global Assessment of Functioning score of about 50. (R. 340).

§404.1519o(b)(2012) by using their first initials rather than their first names. (ECF No. 15-1, 7). She argues that, by signing the reports with "K. Wessel" and "S. Boyer," "no one knows for sure who they are" and that they are rendered "virtually anonymous." (ECF No. 15-1, 7). She states that, while 20 C.F.R. §404.1519n(e)(2012) and 20 C.F.R. §404.1519o(b)(2012) apply to consultative examiners, there is no reason for which these regulations should not be invoked against State agency non-examining sources. (ECF No. 15-1, 7). This argument is without merit for the following reasons.

First, 20 C.F.R. §404.1519n(e)(2012) and 20 C.F.R. §404.1519o(b)(2012) apply to consultative examiners rather than to the State agency's nonexamining sources. Drs. Wessel and Boyer are State agency nonexamining psychologists, not consultative examiners. (R. 17); see also 20 C.F.R. § 404.1502 ("Nonexamining source means a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case.") The consultative examiner in this case was Dr. Stephen Hirsch. (R. 17, 378).

Second, there is no reason for the requirements that apply to consultative examiners to apply to State nonexamining sources. State sources work in conjunction with the agency and are recognized experts in determining disability. See 20 C.F.R. § 404.1527 (explaining that state agency psychologists are

17

"highly qualified psychologists… who are also experts in Social Security disability evaluation"). This is not the case with all consultative examiners, as consultative examinations are performed by physicians not within the agency. H.R. REP. No. 98-618, at 19 (1984).  Additionally, it was due to "many concerns about the improper or generally unsupervised use of CE's" that SSA took "several steps to tighten up procedures in this area" and "the Secretary promulgate[d] such policies in regulations." Id. at 19-20.

Third, even if we accept Ms. Bettis' argument that 20 C.F.R. §404.1519n(e)(2012) and 20 C.F.R. §404.1519o(b)(2012) should apply to the nonexamining psychologists in this case, nothing in these regulations suggests that it is improper for sources to use an initial in lieu of a first name. 20 C.F.R. §404.1519n(e) states only that medical reports must be reviewed and signed by the individual who actually performed the examination. Ms. Bettis does not argue that Drs. Wessel and Boyer did not perform the examinations and thereafter sign the reports themselves. 20 C.F.R. §404.1519o(b) specifies when the agency will and will not make determinations and decisions without a properly signed report but does not specify when a report is considered properly signed.

> **c. The ALJ's finding that Ms. Bettis only suffered from one or two episodes of decompensation was supported by substantial evidence.**

Ms. Bettis next argues that the ALJ failed to properly count Ms. Bettis' number of episodes of decompensation by finding that she had experienced only one or two episodes. (ECF No. 15-1, 7-8). Ms. Bettis also argues that she may have been able to meet Listing 12.04 had the ALJ properly counted her episodes of decompensation or considered Listings 12.06 (anxiety disorders), 12.07 (somatoform disorders), and 12.08 (personality disorders). For the reasons set forth below, this Court rejects these arguments. (ECF No. 15-1, 7-8).

In order to meet listing 12.04, the claimant must meet the requirements in either both "paragraph A" and "paragraph B" or "paragraph C" alone.  20 C.F.R. § 404, Subpart P, Appendix 1. To satisfy "paragraph A" criteria, the claimant must show medically documented persistence of depressive syndrome, manic syndrome, or bipolar syndrome. Id. To satisfy "paragraph B" criteria, the claimant must show at least two of the following criteria: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation of extended duration. Id. Where a "marked" level of impairment is required, it means more than moderate but less than extreme. Id. An episode of decompensation is an exacerbation or temporary increase in

symptoms or signs; episodes can be inferred from, for example,
significant alterations in medication or documentation of
hospitalizations. Id. In order to qualify as "repeated episodes…
of extended duration," the episodes of decompensation should
occur at least three times in a year, or once every four months,
and should last for at least two weeks. Id.

The ALJ found that the record indicates that Ms. Bettis
experienced one to two episodes of decompensation. (R. 18). This
finding is supported by substantial evidence. Dr. Hirsch, an
examining source, stated that Ms. Bettis had been hospitalized
twice in 2005, once for ten days and once for two days. (R.
337). In his report, Dr. Wessell, a nonexamining psychologist,
concluded that Ms. Bettis had experienced one or two episodes of
decompensation of extended duration. (R. 351). Neither source
indicated any other potential periods of decompensation.  Ms.
Bettis was involuntarily committed to Bon Secours Hospital in
December, 2010. (R. 390). This commitment occurred after Drs.
Hirsch and Wessell completed their reports. (R. 335, R.341).[4]
However, in making his determination regarding the number of
episodes of decompensation that Ms. Bettis experienced, the ALJ
took into account Ms. Bettis' December 2010 involuntary
commitment. (R. 18). Additionally, these episodes of

---

[4] Ms. Bettis was committed to Bon Secours Hospital in December, 2010. (R.
390). Drs. Hirsch's Wessell's reports are dated November, 2009. (R. 336,
341).

decompensation did not occur within four months of each other or three times in a year; moreover, none of her hospitalizations lasted for at least two weeks. Ms. Bettis was hospitalized twice in 2005, once for two days and once for ten days. (R. 337). Ms. Bettis was subsequently hospitalized in 2010 for about a week. (R. 390, 402). Therefore, the ALJ's finding that Ms. Bettis had only experienced one or two episodes of decompensation of extended duration, and, consequently, that Ms. Bettis' history of episodes of decompensation did not meet the requirements in Listing 12.04, is supported by substantial evidence.

Moreover, in order to meet Listing 12.04, the claimant must meet all of the requirements in the Listing. See Sullivan v. Zebley, 593 U.S. 521, 523 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") In addition to finding that Ms. Bettis had experienced only one to two episodes of decompensation of extended duration, the ALJ found that Ms. Bettis had only mild restrictions in daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence or pace. (R. 17). Ms. Bettis challenges only the ALJ's finding regarding her episodes of decompensation. (ECF No. 15-1, 7-8). She does not challenge his

finding that she had only mild or moderate, rather than marked, impairment in the aforementioned categories. (ECF No. 15-1, 7-8). Therefore, even if this Court found that the ALJ had undercounted Ms. Bettis' episodes of decompensation, she would still not meet or medically equal Listing 12.04.

### d. The ALJ's decision not to discuss Listings 12.06, 12.07 and 12.08 is not error.

Ms. Bettis next argues that the ALJ erred by failing to make findings with respect to Ms. Bettis' other impairments. (ECF No. 15-1, 8). Specifically, she argues that the ALJ should have considered Listings 12.06 (anxiety disorders), 12.07(somatoform disorders), and 12.08 (personality disorders). (ECF No. 15-1, 8).  The ALJ found that Ms. Bettis did not meet or medically equal Listings 12.04 and 12.09 because he found that Ms. Bettis did not meet the criteria in "paragraph B" or "paragraph C." (R. 17-18). However, the ALJ did not discuss Listings 12.06, 12.07, or 12.08 in his decision. (ECF No. 15-1, 8; ECF. 16-1, 19). Under Listing 12.04 and Listings 12.06, 12.07, and 12.08, "paragraph B" and "paragraph C" requirements are identical. 20 C.F.R. § 404, Subpart P, Appendix 1.

In examining a claimant's impairment,

> "the duty of identification of relevant
> listed impairments and comparison of
> symptoms to Listing criteria is only
> triggered if there is ample evidence in the
> record to support a determination that the
> claimant's impairment meets or equals one of

> the listed impairments. Neither the Social
> Security law nor logic commands an ALJ to
> discuss all or any of the listed impairments
> without some significant indication in the
> record that the claimant suffers from that
> impairment."

Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (citing

Cook v. Heckler, 783 F.2d 1168 (4th Cir.1986)). For the

following reasons, this Court finds that the ALJ's failure to

specifically address Listings 12.06, 12.07, and 12.08 is not

error.

### i. Listing 12.06

Under Listing 12.06, anxiety is the predominant disturbance

or anxiety is experienced if the claimant attempts to confront

certain objects or situations. 20 C.F.R. § 404, Subpart P,

Appendix 1. In order to meet Listing 12.06, the claimant must

meet either "paragraph A" and "paragraph B" requirements or

"paragraph A" and "paragraph C" requirements.  20 C.F.R. § 404,

Subpart P, Appendix 1.

There was sufficient evidence in the record that Ms. Bettis

met or equaled the Listing 12.06 to trigger the ALJ's evaluation

of her symptoms under that Listing. Dr. Hirsch, the examining

source, determined that Ms. Bettis suffered from a "significant

history of generalized anxiety circumstances." (R. 340). Dr.

Wessell, the non-examining source, examined Listing 12.06 but

determined that, although Ms. Bettis may suffer from generalized

anxiety disorder, she did not precisely satisfy the diagnostic criteria for that Listing. (R. 346). However, he did not provide an explanation for this finding. Moreover, Ms. Bettis' testimony at her ALJ hearing as well as her written reports indicate that she suffers from an anxiety disorder.[5] Therefore, the ALJ erred in failing to specifically examine Listing 12.06. See Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986) (remanding the case where there was ample medical evidence in the record that the claimant met or medically equaled one of the arthritic listings).

However, this failure was harmless. The ALJ specifically found that Ms. Bettis did not meet "paragraph B" or "paragraph C" criteria under 12.04. Finding that Ms. Bettis did not meet these criteria under 12.04 is equivalent to finding that Ms. Bettis did not meet these criteria under Listings 12.06, as the criteria are identical. See Bloom v. Astrue CIV. SKG-08-827, 2009 WL 2449877 at *19 n. 18 (D. Md. Aug. 7, 2009) (stating that, because the "paragraph B" criteria under 12.04 and 12.06 are identical to the "paragraph B" and "paragraph C" criteria under 12.02, "the ALJ's finding that [the claimant] did not meet

---

[5] During her ALJ hearing, Ms. Bettis indicated that she was nervous and worried a lot (R. 32, 34, 38), that she was anxious (R. 35), and that she did not like being around others because it made her nervous (R. 38). In her Disability Report, Ms. Bettis indicated that she has "uncontrollable anxiety" that results from her depression and that she has panic attacks. (R. 165). In her Function Report, she stated that she does not like to go outside due to her depression and her anxiety and that driving makes her anxious. (R. 177).

Listing 12.04 or 12.06, because he met neither the B criteria nor the C criteria of those Listings, is tantamount to a finding that [the claimant] did not meet Listing 12.02").

### ii. Listing 12.07

Listing 12.07 concerns somatoform disorders, which are physical disorders that have no known physical cause. 20 C.F.R. § 404, Subpart P, Appendix 1. In order to meet or medically equal Listing 12.07, the individual must meet both "paragraph A" and "paragraph B" requirements. 20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ's failure to specifically discuss Listing 12.07 for somatoform disorders is not error. There existed no reason for the ALJ to address Listing 12.07 for somatoform disorders as there is no indication in the record, from Ms. Bettis or from any of the medical sources, that Ms. Bettis suffered from any physical pain or impairments with unknown origins. (R. 29). In fact, during the administrative hearing, Ms. Bettis' attorney made clear that Ms. Bettis was not suffering from any physical impairments. (R. 29).

### iii. Listing 12.08

Listing 12.08 concerns personality disorders, which exist when the individual's personality traits are inflexible, maladaptive, and cause impairment and distress. 20 C.F.R. § 404, Subpart P, Appendix 1. In order for an individual to meet the

25

required level of severity for a personality disorder, the individual must meet both "paragraph A" and "paragraph B."  20 C.F.R. § 404, Subpart P, Appendix 1. The regulations do not provide a definition of narcissistic personality disorder, however, the DSM-IV characterizes it as being "[a] pervasive pattern of grandiosity (in fantasy or behavior), need for admiration, and lack of empathy, beginning by early adulthood and present in a variety of contexts." DSM-IV, 661. There are several factors a clinician may take into account, including whether the individual: (1) has a grandiose sense of self-importance; (2) is preoccupied with fantasies of unlimited success, power, brilliance, beauty, or ideal love; (3) believes that he or she is "special" and unique and can only be understood by, or should associate with, other special or high-status people; (4) requires excessive admiration; (5) has a sense of entitlement; (6) is interpersonally exploitative; (7) lacks empathy; (8) is often envious of others or believes others are envious of him or her or; (9) shows arrogant, haughty behaviors or attitudes. Id. The individual must meet five or more of the foregoing criteria. Id.

Dr. Hirsch determined that Ms. Bettis may suffer from narcissistic personality disorder. (R. 340). Ms. Bettis' general practitioner also stated that she may suffer from a personality disorder, but did not specify which one. (R. 222). However, Dr.

Wessel ruled out the possibility of narcissistic personality disorder. (R. 348).

Moreover, "paragraph B" requirements under Listings 12.04 and 12.08 are identical and therefore, as explained above, finding that Ms. Bettis did not meet these criteria under 12.04 is equivalent to finding that Ms. Bettis did not meet these criteria under Listings 12.08. See Bloom CIV. SKG-08-827, 2009 WL 2449877 at *19 n. 18 (D. Md. Aug. 7, 2009) (stating that "the ALJ's finding that [the claimant] did not meet Listing 12.04 or 12.06, because he met neither the B criteria nor the C criteria of those Listings, is tantamount to a finding that [the claimant] did not meet Listing 12.02" because B and C criteria were identical under the three Listings).

Therefore, the ALJ did not err in failing to consider Listing 12.08 for personality disorders. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)(the ALJ has the discretion to resolve inconsistencies when there is conflicting evidence in the record).

### e. The ALJ properly considered Ms. Bettis' noncompliance.

Finally, Ms. Bettis argues that the ALJ improperly considered her noncompliance with her medication. (ECF No. 15-1, 8). Ms. Bettis argues that the ALJ must use the criteria in SSR 82-59 if the agency denies a claim due to a failure to comply

with treatment. (ECF No. 15-1, 8).[6] However, the ALJ used Ms.

Bettis' noncompliance as one of several factors in his

discussion of her credibility in making an RFC determination,

rather than as a basis for denying benefits. (R. 18-23).

Therefore, SSR 96-7p, rather than SSR 82-59, is the appropriate

authority. Compare SSR 96-7p (stating that the purpose of 96-7p

is to explain and clarify which symptoms require a credibility

finding, how to examine credibility, and the factors to consider

when determining credibility, which can include noncompliance

with medication) with SSR 82-59 (explaining the analysis

required when an individual is denied benefits by reason of his

or her noncompliance with treatment).

     This case is similar to a Fourth Circuit case in which the

Court stated that SSR 82-59 "only applies to an individual who

would otherwise be found to be under a disability, but who fails

without justifiable cause to follow treatment prescribed by a

treating source." Myers v. Comm'r of Soc. Sec. Admin., 456 F.

App'x 230, 232 (4th Cir. 2011)(citations and alterations

omitted). However, the Court concluded that SSR 82-59 did not

apply to the claimant in that case because the ALJ "did not

_____

[6] Under SSR 82-59 and 20 C.F.R. § 404.1530(b), an ALJ will find that an
individual is not disabled within the meaning of the Act when the individual
fails to comply with treatment without good reason. See 20 C.F.R. § 404.1530
(b) ("If you do not follow the prescribed treatment without a good reason, we
will not find you disabled or, if you are already receiving benefits, we will
stop paying you benefits.").

conclude that [claimant] was disabled but had failed to follow prescribed treatment, and therefore was not entitled to benefits." Id. Rather, the ALJ had concluded that the claimant's assertion that he was impaired despite the use of treatment was not credible due to evidence that the claimant did not use the machine properly. Id. Similarly, the ALJ in this case found that Ms. Bettis was only partially credible due to, among other factors, her noncompliance with her medication. (R. 21-22).

In considering the claimant's symptoms in order to determine the claimant's RFC, the ALJ must follow a two-step process. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. The Fourth Circuit has stated that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms.  20 C.F.R. § 404.1529(b).  Second, the ALJ determines the extent to which the impairments limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). In evaluating the claimant's capacity to work, the ALJ must consider all the available evidence, including medical history,

29

objective medical evidence, and statements by the claimant.  20

C.F.R. § 404.1529(c). In order to evaluate the claimant's

statements, the ALJ must assess their credibility. SSR 96-7p.

To assess credibility, the ALJ should consider factors such as

the claimant's daily activities, treatments he has received for

his symptoms, medications, and any other factors contributing to

functional limitations.  Id.  Compliance with treatment is

relevant in determining a claimant's credibility; an

individual's repeated attempts to seek medical treatment for

pain or for other symptoms supports the individual's allegations

about the effects of the pain or symptoms. SSR 96-7p.

Conversely, the individual's allegations about the effects of

pain or other symptoms may be less credible if the individual is

not following his or her treatment as prescribed when there are

no good reasons for the noncompliance.[7]

The ALJ determined that, although Ms. Bettis did have a

medically determinable impairment that would be reasonably

expected to cause the alleged symptoms, her statements regarding

the intensity, persistence, and limiting effects of these

symptoms were only partially credible. (R. 19, 21). The ALJ

---

[7] The acceptable reasons for noncompliance under 20 C.F.R. § 404.1530(b) are:
(1) the treatment is against the claimant's beliefs or religion, (2) the
treatment would result in loss of vision after cataract surgery, (3) the
surgery was previously performed and was unsuccessful, (4) the treatment is
very risky for the claimant due to its magnitude, unusual nature, or other
reason, or (5) the treatment involves the amputation of an extremity. SSR 96-
7p.

considered several factors in making this determination, including Ms. Bettis' compliance with treatment. (R. 21-22).[8] The ALJ found that, although she was aware that her medication improved her symptoms, Ms. Bettis consciously rejected it. (R. 19). Moreover, there is no indication that Ms. Bettis meets any of the acceptable reasons for noncompliance and the ALJ found that there was no indication in the record that Ms. Bettis had a lack of access to medication. (R. 21).   Therefore, the ALJ properly considered Ms. Bettis' noncompliance in his credibility analysis in determining her RFC.

## VI.  Conclusion

For the foregoing reasons, the Court hereby DENIES plaintiff's motion for summary judgment, GRANTS defendant's motion for summary judgment, and AFFIRMS the decision of the commissioner.


Date: 3/22/13                                    /s/
                                  Susan K. Gauvey
                                  United States Magistrate Judge

---

[8] The ALJ also considered Ms. Bettis' medical history, her activities of daily living, and the opinions of the medical sources of record. (R. 20-22).